UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SAHAMITR PRESSURE CONTAINER PLC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Court No. 23-00077 |

## COMPLAINT

Plaintiff Sahamitr Pressure Container Plc. (also known as Sahamitr Pressure Container Public Company Limited, "SMPC" or "Plaintiff"), by and through the undersigned counsel, White & Case LLP, alleges and states as follows:

### ADMINISTRATIVE DECISION TO BE REVIEWED

1.  Plaintiff contests the final results issued by the International Trade Administration of the Department of Commerce ("Department") in the second administrative review ("POR2") of the antidumping duty ("ADD") order covering steel propane cylinders from Thailand (Case No. A-549-839). The period of review ("POR") for POR2 was August 1, 2020 through July 31, 2021. Notice of the final results was published in the *Federal Register* on March 8, 2023. *Steel Propane Cylinders from Thailand: Final Results of Antidumping Duty Administrative Review; 2020-2021*, 88 Fed. Reg. 14334 (Mar. 8, 2023) ("*Final Results*"); *see also* accompanying *Steel Propane Cylinders from Thailand: Issues and Decision Memorandum for the Final Results of Antidumping Duty Administrative Review; 2020-2021* (Mar. 2, 2023) ("*I&D Memo*").

## JURISDICTION

2.      The Court of International Trade has jurisdiction over this action pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c).

## STANDING OF PLAINTIFF

3.      Plaintiff is a Thai producer and exporter of merchandise subject to the ADD order at issue. Plaintiff participated in the administrative review that resulted in the contested finding. Plaintiff therefore is an "interested party" within the meaning of 19 U.S.C. § 1677(9)(A) and has standing to bring this action pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## TIMELINESS OF THIS ACTION

4.      The contested determination was published in the *Federal Register* on March 8, 2023. *See Final Results*, 88 Fed. Reg. 14334. Plaintiff filed a Summons on April 7, 2023, *i.e.*, within 30 days of the publication of the contested determination in the *Federal Register*, in accordance with 28 U.S.C. § 2636(c) and 19 U.S.C. § 1516a(a)(2)(A); and is filing a complaint today (May 8, 2022), *i.e.*, within 30 days of the Summons as specified in 19 U.S.C. § 1516a(a)(2)(A).

## PROCEDURAL HISTORY AND BACKGROUND

5.      Pursuant to requests by SMPC and Petitioner Worthington Industries ("Petitioner"), the Department initiated the review for POR2. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 86 Fed. Reg. 55811, 55813 (Oct. 7, 2021); *Steel Propane Cylinders from Thailand: Request for Antidumping Duty Administrative Review*, Aug. 27, 2021 (ACCESS Barcode 4155947-01); *Steel Propane Cylinders from Thailand: Second Annual Review Request*, Aug. 30, 2021 (ACCESS Barcode 4156229-01). During the review, SMPC submitted complete responses to all Department requests for information, including the initial questionnaire ("*Initial Questionnaire*") and multiple supplemental questionnaires.

6. In the preliminary results for the review ("*Preliminary Results*"), the Department assigned SMPC a dumping margin of 2.49 percent. *See Steel Propane Cylinders from Thailand: Preliminary Results of Antidumping Duty Administrative Review; 2020-2021*, 87 Fed. Reg. 54476, 54477 (Sept. 6, 2022); *see also* accompanying *Decision Memorandum for Preliminary Results of Antidumping Duty Administrative Review: Steel Propane Cylinders from Thailand; 2020-2021* (Aug. 29, 2022) ("*Preliminary Decision Memo*").

7. In the *Final Results*, the Department removed sales of certain cylinders sold by SMPC in its home market, based on an allegation by Petitioner that these cylinders were outside the scope of the antidumping duty order. *See I&D Memo* at 4-9. The Department also continued to use the average-to-transaction price comparison method, which it had used in the *Preliminary Results*, to calculate SMPC's dumping margin. *Id.* at 17-21. The Department assigned SMPC a final dumping margin of 10.64 percent in the *Final Results*. *Final Results*, 88 Fed. Reg. at 14335. We summarize below the facts relating to these two issues.

**THE DEPARTMENT'S EXCLUSION OF CERTAIN CYLINDERS AS OUT-OF-SCOPE**

8. In calculating the dumping margin, the Department compares U.S. sales to home-market sales of "identical" products. *See* 19 U.S.C. § 1677(16)(A). "To identify such merchandise, Commerce designs a "model-match" methodology consisting of a hierarchy of certain characteristics used to sort merchandise into groups. Each group is then assigned a control number ('CONNUM'), used to match home market sales with U.S. sales." *Bohler Bleche GmbH v. United States*, 324 F. Supp. 3d 1344, 1347 (Ct. Int'l Trade 2018).

9. Since the original investigation ("OI"), the Department has used a CONNUM field to measure the gas capacity of SMPC's cylinders, Field CAPACITYH/U, placed second in the hierarchy. *See Request for Information – Antidumping Duty Administrative Review: Sahamitr*

*Pressure Container Public Company Limited (SMPC) – Steel Propane Cylinders from Thailand*, Oct. 12, 2021 at B-8, C-7 (ACCESS Barcode 4169982-01).

10.     In the OI, the Department instructed SMPC to report the nominal gas capacity in Field CAPACITYH/U based on its customers' information on sales and technical documents, rather than a nominal gas capacity converted from water capacity. *See Steel Propone Cylinders from Thailand: Final Determination of Sales at Less Than Fair Value*, 84 Fed. Reg. 29168 (June 21, 2019), accompanying Issues and Decision Memorandum at 4-17 ("*OI I&D Memo*").  As the Department explained in part, "SMPC tracks nominal gas capacity in its sales records; . . . nominal gas capacity, as listed on SMPC's sales documents, best reflects the pressure of the various gases at issue; . . . . [and] Commerce verified the accuracy of the nominal gas capacity information (as listed on SMPC's sales records). . . ." *OI I&D Memo* at 17.

11.     Consequently, SMPC reported its nominal gas capacity, based on customer information and sales and technical documentation in the OI and the first administrative review ("POR1 review").  *See*, *e.g.*, *Steel Propane Cylinders from Thailand:  Rebuttal Brief*, Oct. 17, 2022, at 4 (ACCESS Barcode 4301519-01) ("*SMPC Rebuttal Brief*").

12.     Likewise, in the POR2 review, SMPC submitted initial data reporting its nominal gas capacity based on customer information and sales and technical documentation, consistent with the two prior segments of the proceeding.  *See Steel Propane Cylinders from Thailand: Responses to Section Band Section C of the Antidumping Duty Questionnaire*, Nov. 30, 2021, at B-12–B-14, C-1 –C-14 (ACCESS Barcode 4186820-01).  Then, over the course of the review, SMPC responded to multiple follow-up questions from the Department regarding its capacity reporting, including through supporting documentation, in numerous supplemental questionnaire responses.  *See Steel Propane Cylinders from Thailand:  Response to the Department's Second Supplemental Section D Questionnaire,* July 26, 2022, at SSD-3–SSD-5 (ACCESS Barcode

4268175-01); *Steel Propane Cylinders from Thailand: Response to Second Supplemental Section B and Section C Questionnaire*, July 11, 2022, at pages SSBC-2 –SSBC-3 and Exhibit SSBC-5 (ACCESS Barcode 4262910-01); *Steel Propane Cylinders from Thailand: Response to Supplemental Section B and Section C Questionnaire*, Mar. 29, 2022, at SBCQR-3, Exhibits SQB-3 and SQB-10 (ACCESS Barcode 4227061-01).

13. On August 5, 2022 – less than a month before the deadline for the *Preliminary Results* (*i.e.*, after it was no longer possible to submit new factual information, *see* 19 C.F.R. § 351.301(c)(5)) – Petitioner submitted comments to the Department regarding the forthcoming *Preliminary Results*. *Steel Propane Cylinders from Thailand – Petitioner's Comments in Advance of the Upcoming Preliminary Results*, Aug. 5, 2022 (ACCESS Barcode 4272269-01) ("*Petitioner's Pre-Preliminary Comments*").

14. Therein, Petitioner identified certain cylinders sold by SMPC in the home market, stating that they are "refrigerant cylinders" rather than propane cylinders. *Id.* at 2. Despite the record evidence discussed above regarding SMPC's reporting of nominal gas capacity, Petitioner accused SMPC of reporting "the nominal gas capacity physical characteristic (i.e., variable CAPACITYH) for these cylinders using a converted water capacity, instead of the gas capacity." *Id.* at 2; *see generally id.* at 2-7. Petitioner then claimed that the ratio used by SMPC to carry out such conversion was "valid only for propane cylinders, not refrigerant cylinders." *Id.* at 2. In turn, Petitioner argued that, by "applying [this] ratio . . . to the water capacity of refrigerant cylinders, SMPC reports the gas capacity of those refrigerant cylinders as if they are propane cylinders." *Id.* at 4-5. Petitioner then concluded that, because the actual gas capacities of such cylinders rendered those cylinders "outside the scope" of the antidumping duty order, "the Department should delete" sales of those cylinders from SMPC's home-market sales database. *See id.* at 6-7.

15. SMPC filed rebuttal comments with the Department on August 16, 2022. *Steel Propane Cylinders from Thailand: Rebuttal Comments Regarding the Department's Upcoming Preliminary Results of Review*, Aug. 16, 2022 (ACCESS Barcode 4274959-01). In those comments, SMPC explained, *inter alia*, that its reporting in Field CAPACITYH was sound, consistent with the Department's prior practice; not based on "converted" water capacity; and supported by extensive record evidence. *See id.* at 2-8.

16. In the *Preliminary Results*, the Department did not remove the cylinders at issue from the calculation of SMPC's dumping margin. *See generally Final Results; I&D Memo*.

17. In its case brief, Petitioner repeated *verbatim* its arguments regarding the allegedly out-of-scope cylinders, further accusing SMPC of attempting to "circumvent the Department's determination on this issue in the [OI]" through its reporting of capacity in POR2. *Steel Propane Cylinders from Thailand: Petitioner's Case Brief for Sahamitr Pressure Container Public Company Limited*, Oct. 6, 2022, at 14. *Compare generally id.* at 5-18 *with Petitioner's Pre-Preliminary Comments* at 2-7. SMPC again responded to these arguments in its rebuttal brief. *See SMPC Rebuttal Brief* at 2-12.

18. In the *Final Results*, the Department adopted Petitioner's argument, removing all sales of the cylinders in question from the calculation of SMPC's dumping margin as outside-the-scope cylinders. *See I&D Memo* at 4-9. Despite having relied on SMPC's customer information and sales and technical documents in the OI, the POR1 review and the *Preliminary Results* – and despite SMPC's explanations and record evidence in the POR2 review – the Department concluded that it "cannot rely on the 'nominal gas capacity' from SMPC's sales records" for the cylinders at issue. *Id.* at 9.

## USE OF THE AVERAGE-TO-TRANSACTION COMPARISON METHOD

19.     The statute and regulation prioritize the Department's use of an average-to-average ("A-A") price comparison method to calculate a dumping margin. *See* 19 U.S.C. § 1677f-l(d)(l)(A); 19 C.F.R. § 351.414(c)(1). If, however, "there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time," the Department may use an average-to-transaction ("A-T") price comparison method. 19 U.S.C. § 1677f-l(d)(l)(B).

20.     Applying its "differential pricing" analysis, the Department used the "Cohen's *d*" test to determine whether there was a pattern of significant price differences. *See Preliminary Decision Memo* at 4-6. Based on this test, the Department preliminarily concluded that SMPC's U.S. sales had prices that "differ{ed} significantly among purchasers, regions, or time periods." *Id.* at 6. Consequently, the Department used the A-T method to calculate SMPC's preliminary dumping margin. *See id.* at 6.

21.     In its case brief, SMPC argued that use of the A-T method was unwarranted based on recent jurisprudence (namely, two cases) from the Court of Appeals for the Federal Circuit ("CAFC"). *See Steel Propane Cylinders from Thailand: Case Brief*, Sept. 28, 2022, at 6-8 (ACCESS Barcode 4289963-01) ("*SMPC Case Brief*").

22.     First, SMPC cited *Stupp Corp. v. United States*, in which the CAFC explained that the meaningfulness of the Cohen's *d* coefficient relies on three assumptions. In particular, the "test groups and the comparison groups" must be (1) "normally distributed" (the "normality" assumption); (2) "of sufficient size" (the "sufficient observation size" assumption); and (3) "of roughly equal variances" (the "roughly equal variances" assumption). *Id.* at 7 (citing 5 F.4th 1341, 1357-58, 1360 (Fed. Cir. 2021)). In *Stupp*, the CAFC held that the Department must "explain whether the limits on the use of the Cohen's *d* test" (*i.e.*, the three assumptions) "were

satisfied . . . or whether those limits need not be observed when Commerce uses the Cohen's *d* test" in antidumping proceedings. 5 F.4th at 1360. Because the Department did not explain whether these three assumptions were met in the *Preliminary Results*, SMPC urged it to "explain whether the assumptions on which the Cohen's *d* test are based were satisfied" in the *Final Results*. *SMPC Case Brief* at 7. "Absent a reasonable explanation," SMPC further argued, "the Department cannot rely on the Cohen's *d* test to justify use of the A-T comparison method (with zeroing)." *Id.*

23.  Separately, in *Mid Continent Steel & Wire Inc. v. United States*, the CAFC found unreasonable the Department's calculation of the denominator of the Cohen's *d* coefficient based on the simple average of the standard deviations for the test group and the comparison group, because the two groups differed in size. 31 F.4th 1367, 1380 (Fed. Cir. 2022). Consequently, the CAFC required the Department to "either provide an adequate explanation for its choice of simple averaging or make a different choice, such as use of weighted averaging or use of the standard deviation for the entire population." *Id.* at 1381. SMPC explained to the Department that, in the POR2 review, the Department had "likewise calculated the Cohen's *d* coefficient using simple averaging even though the test and comparison groups differ in size," and, consequently, argued that "the Department must likewise either adequately explain its use of simple averaging, or select a different method to calculate the Cohen's *d* coefficient." *SMPC Case Brief* at 8.

24.  The Department continued to use the A-T comparison method in the *Final Results*. In doing so, the Department highlighted that both CAFC decisions were "part of ongoing litigation," and claimed that "the three assumptions identified by SMPC . . . are not relevant to Commerce's Cohen's *d* test." *I&D Memo* at 20. The Department further justified its "use of a

simple average" on the basis of its "analysis of the full populations of U.S. prices in both the test and comparison groups." *Id.* at 20-21.

## STATEMENT OF CLAIMS

## COUNT 1:  THE DEPARTMENT'S EXCLUSION OF CERTAIN CYLINDERS AS OUT-OF-SCOPE

25. Paragraphs 5 through 24 are incorporated by reference.

26. The Department's decision to reclassify certain cylinders as outside the scope of the antidumping duty order was unsupported by substantial evidence and contrary to law.

27. As SMPC demonstrated to the Department, its reporting of nominal gas capacity was not based on conversion from water capacity; was supported by evidence on the record; and was consistent with the Department's practice in the OI, the POR1 review, and the Department's instructions in the POR2 review.  Moreover, the Petitioner's raising this issue after the time to submit new factual information undermined SMPC's ability to respond to Petitioner's allegations.  When evaluating a case under the substantial evidence standard of review, "the court analyzes whether the challenged agency action was reasonable given the circumstances presented by the whole record." *Home Prods. Int'l, Inc. v. United States*, 33 C.I.T. 1776 (2009) (citation and internal quotation marks omitted).  Moreover, the Department "may not make minor but disruptive changes in a methodology where a respondent demonstrates . . . reliance on the old methodology used in multiple preceding reviews." *Fujian Mach. & Equip Imp. & Exp. Corp. v. United States*, 178 F. Supp. 2d 1305, 1327 (Ct. Int'l Trade 2001) (citation omitted).  In light of the whole record and these relevant holdings, the Department's decision to exclude the cylinders at issue was unsupported by substantial evidence and otherwise in accordance with law.

## COUNT 2:  USE OF THE AVERAGE-TO-TRANSACTION COMPARISON METHOD

28. Paragraphs 5 through 24 are incorporated by reference.

29. The Department's decision to use the A-T comparison method to calculate SMPC's dumping margin was unsupported by substantial evidence and not in accordance with law.

30. The statute permits the Department to use an A-T comparison method only if "there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time . . . ." 19 U.S.C. § 1677f-l(d)(l)(B). The Department, in turn, uses the Cohen's *d* test to determine whether such price differences exist.  However, the Cohen's *d* test is subject to certain assumptions and requirements that, per recent and relevant precedent, the Department neither followed nor explained.  *See Stupp*, 5 F.4th at 1357-58, 1360; *Mid Continent*, 31 F.4th at 1380-81.  Thus, pursuant to this precedent and the Department's failure to provide the necessary explanation, its continued use of the A-T price comparison method was unsupported by substantial evidence and not in accordance with law.

## PRAYER FOR RELIEF AND JUDGMENT

WHEREFORE, Plaintiff respectfully requests that the Court:

(A) Enter judgment in favor of Plaintiff;

(B) Hold and declare that the Department's exclusion of certain cylinders as out of scope is unsupported by substantial evidence and otherwise not in accordance with law;

(C) Hold and declare that the Department's use of the A-T price comparison method is unsupported by substantial evidence and otherwise not in accordance with law;

(D) Remand this matter to the Department to issue revised final results in conformity with the Court's decision; and

(E)  Grant Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

 /s/ Jay C. Campbell
Jay C. Campbell
Ron Kendler
WHITE AND CASE LLP
701 Thirteenth Street, NW
Washington, DC 20005
(202) 626-3600

Date: May 8, 2023

**NOTICE TO INTERESTED PARTIES**

**SAHAMITR PRESSURE CONTAINER PLC. v. UNITED STATES**
**CIT Court No. 23-00077**

I, Jay C. Campbell of the law firm White & Case LLP, hereby certify that on or promptly after May 8, 2023, pursuant to CIT Rule 3(f), I notified all interested parties who were a party to the proceeding below, by mailing copies of the foregoing Complaint, by certified mail, return receipt requested:

**ON BEHALF OF WORTHINGTON INDUSTRIES**
David C. Smith
**Kelley Drye & Warren LLP**
3050 K Street, NW, Suite 400
Washington, DC 20007

**ON BEHALF OF WORLDWIDE DISTRIBUTION, LLLP**
Gregory S. Menegaz
**deKieffer & Horgan**
1090 Vermont Avenue, NW
Suite 410
Washington, DC 20005

/s/ Jay C. Campbell
Jay C. Campbell

## CERTIFICATE OF SERVICE

I, Jay C. Campbell, of the law firm White & Case LLP, hereby certify that on or promptly after May 8, 2023, copies of the foregoing Complaint was delivered to the following parties by certified mail, return receipt requested:

**UPON THE UNITED STATES:**

Attorney-in-Charge
International Trade Field Office
U.S. Department of Justice
National Courts Branch
Room 346
26 Federal Plaza
New York, NY 10278

Jeanne Davidson
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

**UPON THE DEPARTMENT OF COMMERCE:**

Leslie Kiernan
General Counsel
U.S. Department of Commerce
Mail Stop 5875 HCHB
14th and Constitution Avenue, NW
Washington, DC 20230

Robert Heilferty
Office of the Chief Counsel for Trade Enforcement and Compliance
International Trade Administration
U.S. Department of Commerce
1401 Constitution Ave., NW
Washington, DC 20230

    /s/ Jay C. Campbell
    Jay C. Campbell